[Crim. No. 17346. Fourth Dist., Div. Three. Oct. 31, 1984.]

THE PEOPLE, Plaintiff and Respondent, v.
VICTOR ALDO CORSINI, Defendant and Appellant.

COUNSEL

Mary L. Baca, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Frederick R. Millar, Jr., and Rudolf Corona, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

CROSBY, J.—Victor Aldo Corsini pleaded guilty to felony drunk driving (former Veh. Code, § 23101) after his motion to suppress a blood sample taken to determine his blood-alcohol level was denied.

I

Shortly after midnight on November 8, 1981, Corsini, alone in his vehicle, crossed over the center line on Pacific Coast Highway and struck another car head on. Officers Payne and Strohmeyer of the California Highway Patrol arrived at the scene; Strohmeyer detected the odor of alcohol on Corsini's breath and noted his speech was slurred and his eyes were red, watery, and droopy. Corsini's windshield was cracked and smeared with blood, hair, and flesh. He had facial lacerations and complained of head

and chest pains; the other driver also suffered several injuries, including a broken leg. Both were transported by ambulance to a hospital.

Strohmeyer testified he did not place Corsini under arrest at the scene of the accident because the extent of his injuries was unknown and he appeared to need medical treatment. Although he was incoherent at first and rejected treatment in the emergency room, Corsini remained conscious. Finally, after he allowed himself to be treated, he was arrested by Strohmeyer, given the *Miranda* warning, and told a chemical test would be required to determine whether he was intoxicated. Corsini permitted the blood test.

He was not jailed or physically restrained. But he was to receive additional medical treatment, and it would be hours before the decision to admit him to the hospital could be made. Consequently, after the blood sample was drawn, Strohmeyer relinquished custody to the attending physician and advised Corsini a criminal complaint might be filed against him depending upon the outcome of the blood alcohol test.

The blood alcohol test result was 0.19, and Corsini was charged with felony drunk driving. His motion to dismiss was denied (Pen. Code, § 995), and he then sought to suppress the blood sample as the product of an illegal search and seizure (Pen. Code, § 1538.5). Corsini called Officer Payne and the emergency room physician to testify on his behalf; neither could recall his being placed under arrest or agreeing to a blood test. The court believed Strohmeyer's version, however, and determined the blood sample was properly obtained incident to a lawful arrest (Veh. Code, § 13353). The motion to suppress was denied.

## II

■ Taking a blood sample from a conscious injured motorist does not violate the Fourth Amendment, provided it is "done in a medically approved manner, is incident to a lawful arrest, and is based upon the reasonable belief that the person is intoxicated." (*People* v. *Superior Court (Hawkins)* (1972) 6 Cal.3d 757, 761 [100 Cal.Rptr. 281, 493 P.2d 1145]; *United States* v. *Harvey* (9th Cir. 1983) 701 F.2d 800.) Corsini seeks to relitigate Strohmeyer's credibility on appeal, but that question was determined by the superior court. ■ We are bound by the court's factual findings where they are supported by substantial evidence. (*People* v. *Superior Court (Keithley)* (1975) 13 Cal.3d 406, 410 [118 Cal.Rptr. 617, 530 P.2d 585].) In this case they are.

■  There was obviously ample basis to believe that Officer Strohmeyer announced the arrest, as he testified, despite the conflicting evidence. And, although an arrest also generally includes actual restraint or submission to physical custody (Witkin, Cal. Criminal Procedure (1963) § 89, pp. 91-92), that element, like *Hawkins'* arrest requirement, can be excused by exigent circumstances such as the medical emergency present here. (*People* v. *Superior Court (Logue)* (1973) 35 Cal.App.3d 1 [110 Cal.Rptr. 504]; *People* v. *Carrington* (1973) 31 Cal.App.3d 635 [107 Cal.Rptr. 546].) The notion that seriously injured arrestees, who are already effectively immobilized by their condition, must be subjected to actual physical restraint or jailing, in addition to the advisement of arrest and the physical presence of the police in the emergency room, strikes us as a senseless and inhumane extension of the *Hawkins* rule.

Nor are we troubled by the officers' later decision to release Corsini to the hospital. Pursuant to Penal Code section 849, subdivision (a), if they had not done so, they would have been required to arrange to bring him before a magistrate. That section requires prompt arraignment if the arrestee is "not otherwise released."[1] In the trial court, Corsini argued the arrest was not genuine because the officers could not have released him if it had been, since this case does not fit any of the special exceptions permitting release of arrestees described in Penal Code section 849, subdivision (b). But subdivision (a) of 849 arguably recognizes a more general discretion to release an arrestee. In any event, the contention is a non sequitur; an arrest valid when made is not converted to a sham simply because an officer later elects to release the arrestee, properly or not. Moreover, the latter generally has little cause to complain of his freedom.[2]

---

[1]Penal Code section 849 provides, "(a) When an arrest is made without a warrant by a peace officer or private person, the person arrested, if not otherwise released, shall, without unnecessary delay, be taken before the nearest or most accessible magistrate in the county in which the offense is triable, and a complaint stating the charge against the arrested person shall be laid before such magistrate. [¶] (b) Any peace officer may release from custody, instead of taking such person before a magistrate, any person arrested without a warrant whenever: (1) He is satisfied that there are insufficient grounds for making a criminal complaint against the person arrested. [¶] (2) The person arrested was arrested for intoxication only, and no further proceedings are desirable. [¶] (3) The person was arrested only for being under the influence of a narcotic, drug, or restricted dangerous drug and such person is delivered to a facility or hospital for treatment and no further proceedings are desirable. [¶] (c) Any record of arrest of a person released pursuant to paragraphs (1) and (3) of subdivision (b) shall include a record of release. Thereafter, such arrest shall not be deemed an arrest, but a detention only."

[2]The Legislature could cure undoubted confusion in the trial courts and police agencies by amending Penal Code section 849, subdivision (b) to specifically authorize officers to release hospitalized arrestees.

Judgment affirmed.

Wallin, Acting P. J., and Sonenshine, J., concurred.