**STATE of Iowa, Appellee,**

v.

**Frank John NUCARO, Appellant.**

**No. 99–0255.**

Court of Appeals of Iowa.

April 28, 2000.

Linda Del Gallo, State Appellate Defender, and Dennis D. Hendrickson, Assistant State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Sharon K. Hall, Assistant Attorney General, John P. Sarcone, County Attorney, and John Courter, Assistant County Attorney, for appellee.

Heard by SACKETT, C.J., and VOGEL and HECHT, JJ.

VOGEL, J.

On appeal following his convictions for conspiracy to manufacture a controlled substance, manufacturing a controlled substance, and failure to possess a tax stamp, Frank John Nucaro contends his trial counsel was ineffective for failing to challenge the search of the car in which Nucaro was a passenger and failing to challenge the search as the fruit of an illegal arrest. We find no violation of Nucaro's Fourth Amendment right to privacy in a car in which he was a passenger. We further find that when he was handcuffed he was not "arrested" but detained to allow the officer to make a cursory weapons check of the car. For these reasons, Nucaro's trial counsel was not ineffective in failing to file a motion to suppress the seized evidence.

*Background facts.* On July 4, 1998, Officer Dickel stopped a car for erratic driving and having an excessively loud muffler. As he approached the car, he noticed a very strong odor, which from his narcotics training he suspected to be ether. He stopped at the rear of the car and asked the driver to step out to speak with him. For safety reasons, he asked the passenger, Nucaro, to place and keep his hands on the dash. During his contact with the driver, Officer Dickel observed Nucaro reach into the back seat and pull a blanket over something. He handcuffed the driver, placed him in the patrol car and approached Nucaro. Physically affected by the strong odor, Officer Dickel asked Nucaro to get out of the car. He performed an exterior pat-down for weapons, handcuffed Nucaro, and seated him on a curb. Having seen Nucaro spread a blanket over something in the back seat, and suspicious that Nucaro may have been reaching for a weapon, Officer Dickel looked into the vehicle. He observed the back seat entirely covered with a blanket and an open zipper bag on the front passenger floor holding a container of clear liquid. He detected the strong ether odor emanating from the container and asked Nucaro what was in the bag. Nucaro responded that he did not know because he did not own the car or anything in it. Officer Dickel then lifted the open flap approximately two inches, allowing him to confirm that the container did hold ether, a strong indicator of methamphetamine manufacturing. He immediately backed out of the car and called the Narcotics Control Unit. The unit searched the entire vehicle, revealing a rolling meth lab. Officer Dickel placed the driver and Nucaro under arrest. Prior to trial, Nucaro's counsel conceded that Nucaro had no standing to challenge the search of the vehicle and did not lodge a challenge regarding the legality of the arrest. On appeal, Nucaro argues the evidence from the search of the car should have been suppressed both under the Fourth Amendment and as the fruit of an illegal arrest. He raises these arguments in the context of ineffective assistance of trial counsel.

*Scope of review.* Our review of an allegation of ineffective assistance of counsel is de novo. *State v. Howes,* 525 N.W.2d 874, 876 (Iowa App.1994). A defendant has the burden of proving by a preponderance of the evidence that his attorney did not perform an essential duty and, as a result, he was prejudiced. *Strickland v. Washington,* 466 U.S. 668, 697, 104 S.Ct. 2052, 2069, 80 L.Ed.2d 674, 699–700 (1984). To demonstrate prejudice, a defendant must prove there is a reasonable probabili-

ty that but for counsel's unprofessional errors, the result of the proceeding would have been different. *State v. Tracy*, 482 N.W.2d 675, 680 (Iowa 1992). A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* In alleging ineffective assistance, a defendant must overcome the strong presumption counsel was competent. *State v. Ray*, 516 N.W.2d 863, 865 (Iowa 1994).

*Ineffective assistance of counsel:*

 **A. Legality of the search.** Having already conceded Nucaro was without standing, Nucaro's attorney did not move at trial to suppress the seized evidence, agreeing with the prosecutor that Nucaro did not have standing to object to the search of a car in which he was merely a passenger. On appeal, Nucaro articulates the dilemma that denying possessory interest in the car and seized items resulted in foreclosing any privacy interest he may have claimed under the Fourth Amendment. Without a reasonable expectation of privacy, the car could be searched and items seized without his consent, leaving him no avenue to protest the constitutionality of the search. While Nucaro views this position as impossible, it correctly summarizes the current status of the law: "defendants charged with crimes of possession may only claim the benefits of the exclusionary rule if their own Fourth Amendment rights have in fact been violated." *U.S. v. Salvucci*, 448 U.S. 83, 85, 100 S.Ct. 2547, 2549, 65 L.Ed.2d 619, 623 (1980). Having already denied ownership of the car and the items in it, Nucaro cannot claim a legitimate expectation of privacy in the invaded place. *See Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978). Because Nucaro lacked a privacy interest in the vehicle and its contents, we find his attorney breached no duty by conceding Nucaro's lack of standing to protest the search of the vehicle.

**B. Legality of arrest.** Nucaro next claims he was placed in custodial arrest at the moment he was handcuffed. Without probable cause to arrest, he argues, all evidence seized following the handcuffing should have been suppressed as fruit of an illegal arrest. Before we reach the issue of probable cause, we must first determine if the handcuffing amounted to an arrest.

 An "arrest" is defined in Iowa Code sections 804.5 [1] and 804.14 [2] (1997). *State v. Rains*, 574 N.W.2d 904, 910 (Iowa 1998). An arrest requires "an assertion of authority and purpose to arrest followed by submission of the arrestee." *State v. Delockroy*, 559 N.W.2d 43, 45 (Iowa App. 1996). An arrest has not necessarily occurred because a reasonable person in the same or similar circumstances would not believe he or she was free to leave. *State v. Johnson–Hugi*, 484 N.W.2d 599, 601 (Iowa 1992). It is well established that an officer may make a reasonable seizure of a person during an investigatory stop without it rising to the level of an arrest. *See Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

 The question of when a seizure becomes an arrest is one which is heavily driven by the facts in each case. We have previously stated, "[t]he question of whether a defendant was 'arrested' is determined on a case-by-case basis. There is no bright-line rule or test." *State v. Dennison*, 571 N.W.2d 492, 495 (Iowa 1997). The State admits that Nucaro was seized when Officer Dickel placed the handcuffs

---

1. "Arrest is the taking of a person into custody when and in the manner authorized by law, including restraint of the person or the person's submission to custody." Iowa Code § 804.5 (1997).

2. "The person making the arrest must inform the person to be arrested of the intention to arrest the person, the reason for the arrest, and that the person making the arrest is a peace officer, if such be the case, and require the person being arrested to submit to the person's custody...." Iowa Code § 804.14 (1997).

on him, but asserts the seizure did not rise to the level of an arrest.

Officer Dickel stated, both at the time of the incident and on the witness stand at trial, that his action of handcuffing Nucaro was not to arrest him but to preserve the safety of both Nucaro and himself, as well as any other people that were present in the area. By putting handcuffs on Nucaro, Officer Dickel was able to afford himself an opportunity to safely complete a cursory weapons search of the area under Nucaro's immediate control. Handcuffing, for this limited purpose, is not without authority. See State v. Smith, 552 N.W.2d 163, 164 (Iowa App.1996) (determining Smith was not arrested for purposes of speedy trial when officers handcuffed him in order to safely serve and execute a search warrant on his residence).

■■■■ Nucaro claims the physical touching and placing of handcuffs on his person by Officer Dickel crossed the line and constituted an arrest. "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the ²⁰⁄₂₀ vision of hindsight." Graham v. Connor, 490 U.S. 386, 396, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443, 455 (1989) (citations omitted). There are five factors to consider when attempting to determine whether an arrest or a reasonable seizure was made. U.S. v. Raino, 980 F.2d 1148, 1149–50 (8th Cir.1992). These factors include:

> (1) the number of officers and police cars involved; (2) the nature of the crime and whether there is reason to believe the suspect might be armed; (3) the strength of the officers' articulable, objective suspicions; (4) the erratic behavior of or suspicious movements by the persons under observation; and (5) the need for immediate action by the officers and lack of opportunity for them to have made the stop in less threatening circumstances.

Id. If an officer's actions are reasonable during an investigatory stop under the circumstances present, use of force will not elevate the stop to the level of an arrest. See id. (holding officer's actions of partially blocking a vehicle and drawing a gun were reasonable under the circumstances for an investigatory stop).

Accordingly, we review Officer Dickel's actions under the Raino analysis. First, he was the only officer present during this traffic stop involving two people in a car just off a busy street. Next, Officer Dickel articulated that his suspicions were immediately aroused by several factors, including the erratic driving and the nauseating and overpowering odor of ether coming from the car. Third, although he had instructed Nucaro to keep his hands on the dash, Nucaro turned around in his seat and was seen covering something in the back seat. Fourth, from Nucaro's movements, Officer Dickel suspected Nucaro may have had a weapon within his reach. Finally, Nucaro became increasingly uncooperative, belligerent and aggressive, during the stop.

■■■■ Officer safety is an important underlying element in this analysis. "[E]ven in the case of an investigatory stop, an officer may take such steps as are 'reasonably necessary to protect [his] personal safety and to maintain the status quo' so that the limited purposes of the stop may be achieved." Raino, 980 F.2d at 1149–50. Officers are entitled to protect themselves, even to the reasonable use of a weapon as a protective measure, during an investigatory stop without an escalation to the level of an arrest. State v. Scott, 518 N.W.2d 347, 350 (Iowa 1994) (deciding officer's removal of defendant from vehicle with gun drawn and aimed at defendant was a reasonable use of force under the circumstances in this investigatory stop).

We find handcuffing Nucaro was a seizure but did not rise to the level of an arrest and was reasonable under the specific circumstances. The seizing and detaining was undertaken to afford Officer

Dickel an opportunity to safely complete a cursory weapons search of the area under Nucaro's immediate control and did not rise to the level of an arrest. As no arrest occurred at this point, we need not reach the probable cause issues raised by Nucaro.

We conclude Nucaro's trial counsel did not breach an essential duty in failing to move to suppress the seized evidence. We affirm his convictions and sentences on the charges of conspiracy to manufacture a controlled substance, manufacturing a controlled substance, and failure to possess a tax stamp.

**AFFIRMED.**